UNITED STATES DISRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 18-cv-62400-BB

L.B. JOHNSON, JR., In His Capacity as Personal Representative of The Estate of
Brandon L.B. Johnson, Deceased, and TAMMY SUE STEWART, mother of
Brandon L.B. Johnson, Deceased,

      Plaintiffs,

v.

TIMOTHY NIERMANN, Secretary, State of Florida, Department of Juvenile Justice, STATE
OF FLORIDA, DEPARTMENT OF JUVENILE JUSTICE, an Agency of the State of Florida,
YOUTH OPPORTUNITY INVESTMENTS, LLC, LATOYA JACKSON, in her Individual
Capacity, CARMITA ROSENBERG, in her Individual Capacity, IRA BLOOM, in his Individual
Capacity, Ms. JOHNSON, in her Individual Capacity, ZEDRICK GARDNER, in his Individual
Capacity, LEONARD WILLIAMS, in his Individual Capacity, and SHARON HILL-SMITH, in
her Individual Capacity,

      Defendants.

_____/

## FIRST AMENDED COMPLAINT

Comes now the Plaintiffs, L.B. JOHNSON, JR., in his capacity as Personal
Representative of the Estate of Brandon L.B. Johnson, Deceased, and TAMMY SUE
STEWART, mother of Brandon L.B. Johnson, Deceased  by and through their undersigned
counsel and hereby sues defendants, TIMOTHY NIERMANN, Secretary, State of Florida,
Department of Juvenile Justice, STATE OF FLORIDA, DEPARTMENT OF JUVENILE
JUSTICE, an Agency of the State of Florida, YOUTH OPPORTUNITY INVESTMENTS, LLC,
LATOYA JACKSON, in her Individual Capacity, CARMITA ROSENBERG, in her Individual
Capacity, IRA BLOOM, in his Individual Capacity, Ms. JOHNSON, in her Individual Capacity,
ZEDRICK GARDNER, in his Individual Capacity, LEONARD WILLIAMS, in his Individual
Capacity, and SHARON HILL-SMITH, in her Individual Capacity and states as follows:

## Parties

1.    Plaintiff, L. B. Johnson, Jr., is the personal representative of the Estate of Brandon L.B. Johnson, who is deceased.

2.    Plaintiff, Tammy Sue Stewart, is the mother of Brandon L.B. Johnson, who is deceased.

3.    Defendant, Timothy Niermann, is the Secretary for the State of Florida, Department of Juvenile Justice, an agency of the State of Florida, organized under the existing laws of the State of Florida and was at all times material to this complaint responsible for the establishment of policies and procedures, either formally or by custom and practice, for the employment, training, supervision and conduct of the various officers, employees and medical professionals at the Broward Youth Treatment Center as is described below.

4.    Defendant State of Florida, Department of Juvenile Justice, is an agency of the State of Florida, and was at all times material to this complaint responsible for the establishment and implementation of policies and procedures, either formally or by custom, practice, or contract, for the employment, training, supervision and conduct of the various officers, employees and medical professionals at the Broward Youth Treatment Center per contract.

5.    Defendant Youth Opportunity Investments, LLC, is an Indiana Limited Liability Company, authorized to transact business within the State of Florida as of June 10, 2016, which contracted with the State of Florida, Department of Juvenile Justice on or about August 19, 2016, which was to begin on August 25, 2016, to operate the Broward Youth Treatment Center, a 28-bed non-secure, integrated substance abuse residential program serving youth ages 14 to 18 committed to the Department of Juvenile Justice and was at all times material to this complaint responsible for the establishment of policies and procedures, either formally or by custom and practice, for the employment, training, supervision and conduct of the various officers,

employees and medical professionals at the Broward Youth Treatment Center as is described below.

6.   Per contract, direct services to youth and full responsibility for the program at the Broward Youth Treatment Center began on September 1, 2016 and concluded on February 10, 2018 under Contract #10440 as described below.

7.   Defendant Latoya Jackson, at all times material to this complaint, was an employee of the Youth Opportunity Investments, LLC, in her capacity as Program Director of the Broward Youth Treatment Center, was responsible for giving reasonable and adequate attention to Johnson's medical needs and safety needs and ensuring the availability of properly trained staff, adequate policies and medical staff at the detention center necessary to provide for Johnson's medical and safety needs, a resident of the State of Florida and is otherwise sui juris.

8.   Defendant Carmita Rosenberg, at all times material to this complaint, was an employee of the Youth Opportunity Investments, LLC in her capacity as Assistant Program Director of the Broward Youth Treatment Center, was responsible for giving reasonable and adequate attention to Johnson's medical needs and safety needs and ensuring the availability of properly trained staff, adequate policies and medical staff at the detention center necessary to provide for Johnson's medical and safety needs, a resident of the State of Florida and is otherwise sui juris.

9.   Defendant Ira Bloom, at all times material to this complaint, was an employee of Youth Opportunity Investments, LLC, and observed, witnessed and otherwise participated in the treatment of, supervision of, and other conduct and behavior involving Brandon L.B. Johnson, as is described below, a resident of the State of Florida and is otherwise sui juris.

10. Defendant Ms. (FNU) Johnson, at all times material to this complaint, was an

employee of Youth Opportunity Investments, LLC, and observed, witnessed and otherwise participated in the treatment of, supervision of, and other conduct and behavior involving Brandon L.B. Johnson, as is described below, a resident of the State of Florida and is otherwise sui juris.

11. Defendant Zedrick Gardner, at all times material to this complaint, was an employee of Youth Opportunity Investments, LLC, and observed, witnessed and otherwise participated in the treatment of, supervision of, and other conduct and behavior involving Brandon L.B. Johnson, as is described below, a resident of the State of Florida and is otherwise sui juris.

12. Defendant Leonard Williams, at all times material to this complaint, was an employee of Youth Opportunity Investments, LLC, and observed, witnessed and otherwise participated in the treatment of, supervision of, and other conduct and behavior involving Brandon L.B. Johnson as is described below, a resident of the State of Florida, Miami-Dade County, and is otherwise sui juris.

13. Defendant Sharon Hill-Smith, at all times material to this complaint, was an employee of Youth Opportunity Investments, LLC, as a nurse, and provided medical services and medical treatment to Brandon L.B. Johnson and also observed, witnessed and otherwise participated in the treatment of, supervision of, and other conduct and behavior involving Brandon L.B. Johnson, as is described below a resident of the State of Florida and is otherwise sui juris.

## Jurisdiction and Venue

14. The offenses described below resulted from the failure of the defendant, State of Florida,

Department of Juvenile Justice and the Youth Opportunity Investments, LLC, to employ qualified persons for positions of authority, and/or properly and conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures, either formally or by custom and practice, and/or to properly and reasonably provide adequate and safe detention and incarceration procedures and appropriate medical care and treatment to Brandon L.B. Johnson as part of such detention and incarceration so as to protect the constitutional rights of inmates/detainees like Brandon L.B. Johnson. Defendants' conduct was intentional and grossly negligent, indicated active malice toward Brandon L.B. Johnson and constituted a total, deliberate and reckless disregard for and indifference to his life and his constitutional and common law rights, and justifies and award of punitive damages, in addition to the actual damages that his estate is entitled to recover.

15. This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00) brought pursuant to 42 U.S.C. § 1983, for which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, the Eighth Amendment to the United States Constitution and  Florida state tort claims, including a claim for attorney's fees pursuant to 42 U.S.C. § 1988.

16. Venue is proper because the arrest from which these causes of action arose occurred in Broward County, Florida and the parties either resided or were located within Broward County, Florida at the time the incidents giving rise to this lawsuit occurred.

17. All conditions precedent under Florida law 768.28, prior to the filing of this lawsuit have been either satisfied or waived.

### General Allegations as to all Counts

18. The Broward Treatment Center, at all times material to this complaint, was being

operated by the Youth Opportunity Investments, LLC (hereinafter "YOI"), a foreign corporation from Indiana that contracted with Defendant State of Florida, Department of Juvenile Justice under contract number 10440 (hereinafter "contract") to provide a twenty-eight (28) bed non-secure residential program for boys in need of substance abuse treatment services with innovations in delinquency programming and treatment services.

19. Pursuant to said contract, YOI , as the provider of health services, was required to provide comprehensive on-site medical services designed to provide accountability and rapid response to ensure that the specialized health needs of adolescent boys are met in accordance with Rule 63M-2, Florida Administrative Code, and applicable sections of Rule 63N-1, Florida Administrative Code.

20. Per contract, these medical services, at minimum, shall include primary and preventative care, sick call and episodic case, and management of acute and chronic medical issues and follow up.

21. YOI, was required to have policies and procedures in place in the case of a medical emergency within the facility. Per contract, all staff or volunteers that have direct control with youth are to be trained and understand that they are to immediately call 9-1-1- in a medical emergency that poses the need for urgent medical attention.

22. YOI, was required to provide on-site nursing coverage for forty (40) hours per week, five (5) days per week, with 24/7 on-call to be provided by Registered Nurses (RNs), licensed in the State of Florida.

23. YOI, was required to perform a gender-specific routine screening and evaluation, and as outlined in Rule 63M-2, Florida Administrative Code, and applicable sections of Rule 63N-1, Florida Administrative Code.

24. YOI, was required to complete a Facility Entry Physical Screening Form at the time of Johnson's admission.

25. YOI, was required to conduct a comprehensive physical assessment within the required time frame of admission by an MD, DO, ARNP or PA. Per contract, at a maximum, the Comprehensive Physical Assessment was required to be completed within seven (7) calendar days of admission for any youth with a Medical Grade of 1, 2, 3, 4 or 5.

26. If a youth is noted to have a medical condition on admission, then they shall be seen sooner.

27. Any existing comprehensive physical assessment must have been performed within one year of admission for youth with Medical Grades of 2, 3, 4 or 5 and within two years for youth with a Medical Grade of 1.

28. Per contract, YOI, was required to treat and monitor acute and chronic conditions that any youth had while housed at the Broward Youth Treatment Center.

29. Per contract, "No more than three months shall elapse before a youth with a chronic health problem is assessed, in a routine follow up, by a health care Provider at the level of an MD, DO, PA, or ARNP.

30. Per contract, YOI, was required to train all full-time and part-time direct care Provider staff, in accordance with Rule 63H, Florida Administrative Code, including PAR certification.

31.  Per contract, in addition to DJJ Learning management System, YOI was required to train direct staff in ethics within the correctional environment, including the proper maintenance of documents and recorded materials relating to security issues; staff stress management; gender responsive services for adolescent delinquent youth; behavior management and modification; positive reinforcement techniques and strategies; emotional and behavioral development of

children and adolescents; risk factors for delinquency and their treatment; physical development and common health issues of adolescents; restorative justice programming; risk factors and triggers relating to youth with a history of victimization; post-traumatic stress disorder (PTSD), victimization, exploitation, domestic violence, trauma, and recovery issues; first aid and cardiopulmonary resuscitation; AED; universal precautions and blood borne pathogens, such training to meet Federal Rule CFR 1910.1030 (OSHA Standard); emergency evacuation procedures for youth with a medical alert system; for staff conducting intake, the Facility Entry Physical Health Screening Form and administration of the Massachusetts Youth Screening Instrument-Second Edition (MAYS1-2), the PACT (includes RPACT), and other required intake processes and procedures; Risk factors and triggers relating to homicidal risk and homicidal prevention; immediate access to emergency medical, mental health, and substance abuse services; The programs treatment model; Suicide Prevention Processes and Procedures; DJJ Goals, Mission & Philosophy; Americans with Disabilities Act/PRES; Program and facility rules/personnel policies and job responsibilities; Confidentiality (HIPPA)/Reporting Child abuse; Safety and Security Issues; Incident reporting/Grievance procedures; Employee standards of conduct; Cultural Competency; Sexual Harassment; Youth/Parent/Employee handbook; Child Welfare training tool kit; Job specific training; Motivational Intervening; Living environment treatment standards; Med administration/mad alerts/allergy alerts; Fire safety; Communication skills; gang training; Security; Treatment needs and issues to youth; Positive and appropriate interaction with youth; Talks My Father Never Had with Me; and RPACT.

32. Per contract, YOI, shall provide twenty-four (24) hours awake supervision every day of the year and appropriate levels of physical sight and sound presence of staff (at a minimum of 1:8 awake; 1:8 evening, 1:10 sleep and 1:5 off-site activities) to provide immediate response to

emergencies, active supervision of the youth, and suitable and timely response to the everyday needs of youth while maintaining safety and security within the program.

33. On March 28, 2016, the decedent, Brandon L.B. Johnson (hereinafter "Johnson") was Court ordered into the custody of the State of Florida, Department of Juvenile Justice and placed in the Broward Youth Treatment Center, located at 8301 South Palm Drive, Pembroke Pines, Florida where he remained until the date of his death on October 11, 2016.

34. At the time of his admission, available medical records indicated that from age 8-10, Johnson was prescribed Depakote for seizures and also experienced significant problems with asthma.

35. As a result of his medical history, Johnson's name was placed on a medical alert list within the Broward Youth Treatment Center in order to alert staff and serve as notice that Johnson was to be monitored accordingly.

36. On October 10, 2016, at approximately 9:00 p.m. Johnson retired to his room (Room 102) which he shared with several other boys in the Broward Youth Treatment Center.

37. On that same date, at approximately 9:30 p.m. Johnson was heard by some of the other residents making a "funny sound" while he laid on his bed.

38. On that same date, at approximately 11:30 p.m. one of the other boys, referred to as "Youth M.S," noticed Johnson had not made any noise for a while and decided to check on him.

39. After checking on Johnson the Youth M.S was unsure if Johnson was breathing so he went to the staff and reported it to Defendant Leonard Williams, Supervisor.

40. Defendant Leonard Williams then went inside room 102 and called to Johnson to wake

up. After a couple of attempts to call on Johnson to wake up, Defendant Leonard Williams checked Johnson's pulse but got no response. Defendant Leonard Williams then checked Johnson's pulse on his wrist and still got no response.

41. After feeling no pulse and getting no response from Johnson to wake up, Defendant Leonard Williams again began to calling to Johnson while shaking him. Thereafter, Defendant Leonard Williams took Johnson's pulse again and noticed Johnson was cold to the touch.

42. Defendant Leonard Williams then alerted Defendant Ira Bloom to run and get the nurse.

43.  Defendant Sharon Hill-Smith, the nurse on duty at the time, responded to Johnson's room and began calling out his name. Defendant Sharon Hill-Smith also checked Johnson's pulse.

44. After determining that Johnson had no pulse, Defendant Sharon Hill-Smith notified Defendant Leonard Williams to call 9-1-1.

45. At approximately 11:38 p.m. Defendant Leonard Williams contacted 9-1-1 who asked him to remain on the line until the police and the paramedics arrived.

46. When Defendant Leonard Williams returned to the room, he observed Defendant Sharon Hill-Smith and Defendant Zedrick Gardner performing CPR and utilizing the AED machine.

47. At 11:52 p.m. paramedics arrived and transported Johnson to Memorial Hospital in Pembroke Pines, Florida by EMS where he was pronounced dead on October 11, 2016.

48.  On October 11, 2016, Johnson's autopsy was performed by Broward County Medical Examiner Craig Mallak, who opined that Johnson's death was probably caused by a seizure disorder.

49. At the time of his initial incarceration and then during the time that Johnson began

suffering from the seizure until the time he was removed from the detention center by the EMT's, the defendant staff at the Broward Youth Treatment Center and he defendant medical personnel failed to provide for Johnson's safety and his medical needs which conduct resulted in serious physical injury and resulting death of Johnson.

## COUNT 1-VIOLATION OF CIVIL RIGHTS

### Count 1(a): Defendant Latoya Jackson

Pursuant to Fed. R.Civ. P. 10(c), the plaintiffs adopt herein by reference all of the averments set forth above, and further states as follows:

50. As a detainee confined to the Broward Youth Treatment Center, Johnson had a legal right, pursuant to the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution and other applicable law, to be provided with adequate attention by the YOI staff to provide for his medical and safety needs.

51. Defendant Latoya Jackson, was the Program Director of the Broward Youth Treatment Center to supervise and otherwise control the non-medical and medical staff and the administration of medical services and medical care to detainees who were housed at the Broward Youth Treatment Center, including Johnson.

52. During the time Johnson was in room 102 on October 10, 2016 and was in physical distress as a result of a seizure, Johnson developed serious medical and safety needs that required immediate medical attention.

53. The defendant Latoya Jackson neglected her duty and responsibility to give reasonable care and adequate attention to Johnson's medical needs and safety needs.

54. At the time of the defendant Latoya Jackson's aforesaid conduct and violation of

Johnson's legal rights as described above, Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff to provide for his medical and safety needs, was clearly established under the law.

55. As a direct and proximate cause of the defendant Ms. Johnson's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, Johnson suffered significant bodily injury, including physical pain, suffering, mental anguish and emotional distress, and then death.

56. As a direct and proximate cause of the defendant Latoya Jackson's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, and Johnson's resulting death, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that Johnson would have earned over the remainder of his anticipated life and his estate is entitled to recover actual and punitive damages.

## Count 1(b): Defendant Carmita Rosenberg

### DELIBERATE INDIFFERENCE

57. As a detainee confined to the Broward Youth Treatment Center, Johnson had a legal right, pursuant to the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution and other applicable law, to be provided with adequate attention by the YOI staff to provide for his medical and safety needs.

58. Defendant Carmita Rosenberg, was the Assistant Program Director of the Broward Youth Treatment Center to supervise and otherwise control the non-medical and medical staff and the administration of medical services and medical care to detainees who were housed at the Broward Youth Treatment Center, including Johnson.

59. During the time Johnson was in room 102 on October 10, 2016 and was in physical distress as a result of a seizure, Johnson developed serious medical and safety needs that required immediate medical attention.

60. The defendant Carmita Rosenberg neglected her duty and responsibility to give reasonable care and adequate attention to Johnson's medical needs and safety needs.

61. At the time of the defendant Carmita Rosenberg's aforesaid conduct and violation of Johnson's legal rights as described above, Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff to provide for his medical and safety needs, was clearly established under the law.

62. As a direct and proximate cause of the defendant Ms. Johnson's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, Johnson suffered significant bodily injury, including physical pain, suffering, mental anguish and emotional distress, and then death.

63. As a direct and proximate cause of the defendant Carmita Rosenberg's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety

needs, and Johnson's resulting death, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that Johnson would have earned over the remainder of his anticipated life and his estate is entitled to recover actual and punitive damages.

### Count 1(c): Defendant Ms. Johnson

### DELIBERATE INDIFFERENCE

64. As a detainee confined to the Broward Youth Treatment Center, Johnson had a legal right, pursuant to the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution and other applicable law, to be provided with adequate attention by the YOI staff to provide for his medical and safety needs.

65. Defendant Ms. Johnson was the Shift A Floor Supervisor in charge of rooms 101 and 102 between the hours of 8:00 p.m. and 10:00 p.m.

66. The defendant Ms. Johnson being present in the vicinity of room 102 during the relevant time period, had the aforesaid legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs.

67. During such time, Johnson had serious medical and safety needs that required immediate medical attention in order to protect Johnson's health, welfare and his life.

68. Defendant Ms. Johnson neglected her legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs and was deliberately indifferent to Johnson's medical and safety needs.

69. At the time of the defendant Ms. Johnson's aforesaid conduct and violation of Johnson's

legal rights as described above, Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff to provide for his medical and safety needs, was clearly established under the law.

70. As a direct and proximate cause of the defendant Ms. Johnson's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, Johnson suffered significant bodily injury, including physical pain, suffering, mental anguish and emotional distress, and then death.

71. As a direct and proximate cause of the defendant Ms. Johnson's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, and Johnson's resulting death, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that Johnson would have earned over the remainder of his anticipated life and his estate is entitled to recover actual and punitive damages.

## Count 1(d): Defendant Leonard Williams

### DELIBERATE INDIFFERENCE

72. As a detainee confined to the Broward Youth Treatment Center, Johnson had a legal right, pursuant to the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution and other applicable law, to be provided with adequate attention by the YOI staff to provide for his medical and safety needs.

73. Defendant Leonard Williams was the Shift B Floor Supervisor in charge of rooms 101 and 102 between the hours of 10:00 p.m. and 12:00 a.m.

74. The defendant Leonard Williams being present in the vicinity of room 102 during the relevant time period had the aforesaid legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs.

75. During such time, Johnson had serious medical and safety needs that required immediate medical attention in order to protect Johnson's health, welfare and his life.

76. Defendant Leonard Williams neglected his legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs and was deliberately indifferent to Johnson's medical and safety needs.

77. At the time of the defendant Leonard Williams' aforesaid conduct and violation of Johnson's legal rights as described above, Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff to provide for his medical and safety needs, was clearly established under the law.

78. As a direct and proximate cause of the defendant Leonard Williams' aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, Johnson suffered significant bodily injury, including physical pain, suffering, mental anguish and emotional distress, and then death.

79. As a direct and proximate cause of the defendant Leonard Williams' aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the

YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, and Johnson's resulting death, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that Johnson would have earned over the remainder of his anticipated life and his estate is entitled to recover actual and punitive damages.

## Count 1(e): Defendant Ira Bloom

### DELIBERATE INDIFFERENCE

80. As a detainee confined to the Broward Youth Treatment Center, Johnson had a legal right, pursuant to the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution and other applicable law, to be provided with adequate attention by the YOI staff to provide for his medical and safety needs.

81. Defendant Ira Bloom was present in the vicinity of room 102 during the relevant time Period and had the aforesaid legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs.

82. The defendant Ira Bloom being present in the vicinity of room 102 during the relevant time period had the aforesaid legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs.

83. During such time, Johnson had serious medical and safety needs that required immediate medical attention in order to protect Johnson's health, welfare and his life.

84. Defendant Ira Bloom neglected his legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs and was deliberately indifferent to Johnson's medical and safety needs.

85. At the time of the defendant Ira Bloom's aforesaid conduct and violation of Johnson's

legal rights as described above, Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff to provide for his medical and safety needs, was clearly established under the law.

86. As a direct and proximate cause of the defendant Ira Bloom's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, Johnson suffered significant bodily injury, including physical pain, suffering, mental anguish and emotional distress, and then death.

87. As a direct and proximate cause of the defendant Ira Bloom's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, and Johnson's resulting death, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that Johnson would have earned over the remainder of his anticipated life and his estate is entitled to recover actual and punitive damages.

## Count 1(f): Defendant Zedrick Gardner

## DELIBERATE INDIFFERENCE

88. As a detainee confined to the Broward Youth Treatment Center, Johnson had a legal right, pursuant to the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution and other applicable law, to be provided with adequate attention by the YOI staff to provide for his medical and safety needs.

89. Defendant Zedrick Gardner was present in the vicinity of room 102 during the relevant time Period and had the aforesaid legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs.

90. The defendant Zedrick Gardner being present in the vicinity of room 102 during the relevant time period had the aforesaid legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs.

91. During such time, Johnson had serious medical and safety needs that required immediate medical attention in order to protect Johnson's health, welfare and his life.

92. Defendant Zedrick Gardner neglected his legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs and was deliberately indifferent to Johnson's medical and safety needs.

93. At the time of the defendant Zedrick Gardner's aforesaid conduct and violation of Johnson's legal rights as described above, Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff to provide for his medical and safety needs, was clearly established under the law.

94. As a direct and proximate cause of the defendant Zedrick Gardner's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, Johnson suffered significant bodily injury, including physical pain, suffering, mental anguish and emotional distress, and then death.

95. As a direct and proximate cause of the defendant Zedrick Gardner's aforesaid neglect and

deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, and Johnson's resulting death, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that Johnson would have earned over the remainder of his anticipated life and his estate is entitled to recover actual and punitive damages.

## Count 1(g): Defendant Sharon Hill-Smith

### DELIBERATE INDIFFERENCE

96. As a detainee confined to the Broward Youth Treatment Center, Johnson had a legal right, pursuant to the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution and other applicable law, to be provided with adequate attention by the YOI staff to provide for his medical and safety needs.

97. Defendant Sharon Hill-Smith was the nurse on duty and was present in the vicinity of room 102 during the relevant time period and had the aforesaid legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs.

98. The defendant Sharon Hill-Smith being present in the vicinity of room 102 during the relevant time period had the aforesaid legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs.

99. During such time, Johnson had serious medical and safety needs that required immediate medical attention in order to protect Johnson's health, welfare and his life.

100.       Defendant Sharon Hill-Smith neglected her legal duty to give reasonable and adequate

attention to Johnson's medical needs and safety needs and was deliberately indifferent to Johnson's medical and safety needs.

101.    At the time of the defendant Sharon Hill-Smith's aforesaid conduct and violation of Johnson's legal rights as described above, Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff to provide for his medical and safety needs, was clearly established under the law.

102.    As a direct and proximate cause of the defendant Sharon Hill-Smith's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, Johnson suffered significant bodily injury, including physical pain, suffering, mental anguish and emotional distress, and then death.

103.    As a direct and proximate cause of the defendant Sharon Hill-Smith's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, and Johnson's resulting death, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that Johnson would have earned over the remainder of his anticipated life and his estate is entitled to recover actual and punitive damages.

## Count 1(h): Defendant Youth Opportunity Investments, LLC

### Deliberate Indifference

104.     As a detainee confined to the Broward Youth Treatment Center, Johnson had a legal right, pursuant to the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution and other applicable law, to be provided with adequate attention by the YOI staff to provide for his medical and safety needs.

105.     Defendant Youth Opportunity Investments, LLC, employed defendants Johnson, Bloom, Williams, Gardner and Hill-Smith during the relevant time period and had the aforesaid legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs.

106.     The defendant Youth Opportunity Investments, LLC, through its employees had the aforesaid legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs.

107.     During such time, Johnson had serious medical and safety needs that required immediate medical attention in order to protect Johnson's health, welfare and his life.

108.     Defendant Youth Opportunity Investments, LLC's employees as referenced above neglected their legal duty to give reasonable and adequate attention to Johnson's medical needs and safety needs and was deliberately indifferent to Johnson's medical and safety needs.

109.     At the time of the defendant Youth Opportunity Investment, LLC's employees aforesaid conduct and violation of Johnson's legal rights as described above, Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff to provide for his medical and safety needs, was clearly established under the law.

110.     As a direct and proximate cause of the defendant Youth Opportunity Investment,

LLC's employees' aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, Johnson suffered significant bodily injury, including physical pain, suffering, mental anguish and emotional distress, and then death.

111.     As a direct and proximate cause of the defendant Youth Opportunity Investment, LLC's aforesaid neglect and deliberate indifference to Johnson's legal rights to be provided with conditions of confinement that were humane, including the right to reasonable and adequate attention by the YOI staff who were present in the vicinity of room 102 to provide for his medical and safety needs, and Johnson's resulting death, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that Johnson would have earned over the remainder of his anticipated life and his estate is entitled to recover actual and punitive damages.

**Ratification of Acts of YOI Staff**

112.     The defendants Ms. Johnson and Leonard Williams, as Floor Supervisors of the non-secure units Rooms 101 and 102 of the Broward Youth Treatment Center between the hours of 8:00 p.m. and 12:00 a.m., had final making authority over all of the conduct of the other non-medical staff within the vicinity of rooms 101 and 102 who observed, witnessed and otherwise participated in the treatment of, supervision of and other conduct and behavior involving Johnson as described above.

113.     The defendants Ms. Johnson and Leonard Williams, through their direct participation in the treatment of, supervision of and other conduct and behavior involving Johnson as described above, ratified all of such illegal and unconstitutional conduct against

Johnson and such ratification by the defendants Ms. Johnson and Leonard Williams subjects defendant State of Florida, Department of Juvenile Justice to municipal liability under 42 U.S.C. § 1983.

114.     As a direct and proximate cause of the ratification of all of such illegal and unconstitutional conduct against Johnson by the defendants Johnson, Bloom, Williams, and Gardner, Johnson suffered significant bodily injury, including physical pain, suffering, mental anguish and emotional distress, and then death, and the defendant Youth Opportunity Investments, LLC, has liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

115.     As a direct and proximate cause of the ratification of all of such aforesaid illegal and unconstitutional conduct against Johnson by the defendants Johnson, Bloom, Williams, and Gardner and the resulting death of Johnson, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income under 42 U.S.C. § 1983.

**Ratification of Acts of Medical Staff**

116.     Defendant Hill-Smith, as Charge Nurse of the shift at the Broward Youth Treatment Center, had the final decision making authority over all the conduct of the medical staff within the Broward Youth Treatment Center who provided medical services and treatment to Johnson and also observed, witnessed and otherwise participated in the treatment of, supervision of and other conduct and behavior involving Johnson as described above.

117.     Defendant Hill-Smith, through her direct failure to provide necessary medical care and treatment to Johnson and her failure to direct other medical staff under her supervision at the detention center to provide necessary medical care and treatment to Johnson, ratified all of

such illegal and unconstitutional conduct against Johnson and such ratification by the defendants Hill-Smith subjects the defendant Youth Opportunity Investments, LLC to liability under 42 U.S.C. § 1983.

### Existence of an Illegal Official Policy

118.     The defendant Youth Opportunity Investments, LLC, had an obligation not to use and employ official policies that violated Johnson's constitutional right against deliberate indifference to his reasonable and necessary medical needs.

119.     The defendant Youth Opportunity Investments, LLC had in force and effect an official policy described in paragraph 31. Said defective policy required a ten- minute bed check where employees conducted those ten-minute bed checks were not required to see any sign of life of the youth, even for those on medical alert, as Johnson, nor were they required to actually enter into the detainees' rooms when conducting the ten-minute bed check.

120.     As a result of the defective policy, employees of defendant Youth Opportunity Investments, LLC, specifically, defendants Johnson, Bloom, Williams, Gardner and Hill-Smith, were not aware that Johnson was suffering or had suffered a life-threatening seizure that required immediate medical attention until it was too late.

121.     As a direct and proximate cause of the defendant Youth Opportunity Investments, LLC's official policy in the form of the 10-minute bed check, which violated Johnson's constitutional right against deliberate indifference to his reasonable and necessary medical needs, Johnson suffered bodily injury, including physical pain, suffering, mental anguish and emotional distress, and death and the defendant Youth Opportunity Investments, LLC has liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

122.     As a direct and proximate cause of the defendant Youth Opportunity Investments,

LLC's official policy in the form of the 10-minute bed check, which violated Johnson's constitutional right against deliberate indifference to his reasonable and necessary medical needs and resulting death of Johnson, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that Johnson would have earned over the remainder of his anticipated life, and the defendant Youth Opportunity Investments, LLC has liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

**Existence of a Policy of Inadequate Training and Supervision**

123.    The defendant Youth Opportunity Investments, LLC had an obligation to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs.

124.    The defendant Youth Opportunity Investments, LLC failed to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs.

125.    As a direct and proximate cause of the defendant Youth Opportunity Investments, LLC's failure to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as

to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs, Johnson suffered bodily injury, including physical pain, suffering, mental anguish and emotional distress, and death and the defendant Youth Opportunity Investments, LLC has liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

126.     As a direct and proximate cause of the defendant Youth Opportunity Investments, LLC's failure to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs and the resulting death of Johnson, the estate of  Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of earnings and income that Johnson would have earned over the remainder of his anticipated life, and the defendant Youth Opportunity Investments, LLC has liability for such funeral and burial expenses under 42 U.S.C. § 1983.

**Existence of custom of Tolerance of Federal Rights Violations**

127.     The defendant Youth Opportunity Investments, LLC, maintained and perpetuated a custom of tolerance or acquiescence of the medical staff at the Broward Youth Treatment Center failing to properly provide necessary medical care and treatment to detainees at the Broward Youth Treatment Center so as to violate the detainees' constitutional right against deliberate indifference to their reasonable and necessary medical needs.

128.     As a direct and proximate cause of the defendant Youth Opportunity Investments, LLC maintaining and perpetuating a custom of tolerance or acquiescence of the medical staff at the Broward Youth Treatment Center failing to properly provide necessary medical care and

treatment to detainees at the Broward Youth Treatment Center so as to violate the detainees' constitutional right against deliberate indifference to their reasonable and necessary medical needs, Johnson suffered bodily injury, including physical pain, suffering, mental anguish and emotional distress, and death and the defendant Youth Opportunity Investments, LLC has municipal liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

129.     As a direct and proximate cause of the defendant Youth Opportunity Investments, LLC maintaining and perpetuating a custom of tolerance or acquiescence of the medical staff at the Broward Youth Treatment Center failing to properly provide necessary medical care and treatment to detainees at the Broward Youth Treatment Center so as to violate the detainees' constitutional right against deliberate indifference to their reasonable and necessary medical needs, and the resulting death of Johnson, the estate of Johnson suffered loss and damages in the form of funeral and burial expenses and loss of earnings and income that Johnson would have earned over the remainder of his anticipated life, and the defendant Youth Opportunity Investments, LLC has liability for such funeral and burial expenses under 42 U.S.C. § 1983.

**Count 1(i): Defendant Timothy Niermann, Secretary,  State of Florida, Department of Juvenile Justice**

**Ratification of Acts of YOI Staff**

130.     The defendants Ms. Johnson and Leonard Williams, as Floor Supervisors of the non-secure units Rooms 101 and 102 of the Broward Youth Treatment Center between the hours of 8:00 p.m. and 12:00 a.m., had final making authority over all of the conduct of the other non-medical staff within the vicinity of rooms 101 and 102 who observed, witnessed and otherwise

participated in the treatment of, supervision of and other conduct and behavior involving Johnson as described above.

131.     The defendants Ms. Johnson and Leonard Williams, through their direct participation in the treatment of, supervision of and other conduct and behavior involving Johnson as described above, ratified all of such illegal and unconstitutional conduct against Johnson and such ratification by the defendants Ms. Johnson and Leonard Williams subjects defendant State of Florida, Department of Juvenile Justice to municipal liability under 42 U.S.C. § 1983.

132.     As a direct and proximate cause of the ratification of all of such illegal and unconstitutional conduct against Johnson by the defendants Johnson, Bloom, Williams, and Gardner, Johnson suffered significant bodily injury, including physical pain, suffering, mental anguish and emotional distress, and then death, and the defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice has municipal liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

133.     As a direct and proximate cause of the ratification of all of such aforesaid illegal and unconstitutional conduct against Johnson by the defendants Johnson, Bloom, Williams, and Gardner and the resulting death of Johnson, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income under 42 U.S.C. § 1983.

**Ratification of Acts of Medical Staff**

134.     Defendant Hill-Smith, as Charge Nurse of the shift at the Broward Youth Treatment Center, had the final decision making authority over all the conduct of the medical staff within the Broward Youth Treatment Center who provided medical services and treatment

to Johnson and also observed, witnessed and otherwise participated in the treatment of, supervision of and other conduct and behavior involving Johnson as described above.

135.     Defendant Hill-Smith, through her direct failure to provide necessary medical care and treatment to Johnson and her failure to direct other medical staff under her supervision at the detention center to provide necessary medical care and treatment to Johnson, ratified all of such illegal and unconstitutional conduct against Johnson and such ratification by the defendants Hill-Smith subjects the defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice to municipal liability under 42 U.S.C. § 1983.

### Existence of an Illegal Official Policy

136.     The defendant State of Florida, Department of Juvenile Justice, had an obligation not to use and employ official policies that violated Johnson's constitutional right against deliberate indifference to his reasonable and necessary medical needs.

137.     The defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice had in force and effect an official policy described in paragraph 31. Said defective policy required a ten- minute bed check where employees conducted those ten-minute bed checks were not required to see any sign of life of the youth, even for those on medical alert, as Johnson, nor were they required to actually enter into the detainees' rooms when conducting the ten-minute bed check.

138.     As a result of the defective policy, employees of defendant Youth Opportunity Investments, LLC, specifically, defendants Johnson, Bloom, Williams, Gardner and Hill-Smith, were not aware that Johnson was suffering or had suffered a life-threatening seizure that required immediate medical attention until it was too late.

139.     As a direct and proximate cause of the defendant Timothy Niermann, as Secretary

for the State of Florida, Department of Juvenile Justice's official policy in the form of the 10-minute bed check, which violated Johnson's constitutional right against deliberate indifference to his reasonable and necessary medical needs, Johnson suffered bodily injury, including physical pain, suffering, mental anguish and emotional distress, and death and the Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice has municipal liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

140.     As a direct and proximate cause of the Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice's official policy in the form of the 10-minute bed check, which violated Johnson's constitutional right against deliberate indifference to his reasonable and necessary medical needs and resulting death of Johnson, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that Johnson would have earned over the remainder of his anticipated life, and the Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice has municipal liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

**Existence of a Policy of Inadequate Training and Supervision**

141.     The defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice had an obligation to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs.

142.     The defendant Timothy Niermann, as Secretary for the State of Florida,

Department of Juvenile Justice failed to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs.

143.    As a direct and proximate cause of the defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice's failure to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs, Johnson suffered bodily injury, including physical pain, suffering, mental anguish and emotional distress, and death and the defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice has municipal liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

144.    As a direct and proximate cause of the defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice's failure to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs and the resulting death of Johnson, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of earnings and income that Johnson would have earned

over the remainder of his anticipated life, and the defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice has municipal liability for such funeral and burial expenses under 42 U.S.C. § 1983.

## Existence of Custom of Tolerance of Federal Rights Violations

145.     The defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice, maintained and perpetuated a custom of tolerance or acquiescence of the medical staff at the Broward Youth Treatment Center failing to properly provide necessary medical care and treatment to detainees at the Broward Youth Treatment Center so as to violate the detainees' constitutional right against deliberate indifference to their reasonable and necessary medical needs.

146.     As a direct and proximate cause of the defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice maintaining and perpetuating a custom of tolerance or acquiescence of the medical staff at the Broward Youth Treatment Center failing to properly provide necessary medical care and treatment to detainees at the Broward Youth Treatment Center so as to violate the detainees' constitutional right against deliberate indifference to their reasonable and necessary medical needs, Johnson suffered bodily injury, including physical pain, suffering, mental anguish and emotional distress, and death and the defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice has municipal liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

147.      As a direct and proximate cause of the defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice maintaining and perpetuating a custom of tolerance or acquiescence of the medical staff at the Broward Youth Treatment Center failing to properly provide necessary medical care and treatment to detainees at the Broward

Youth Treatment Center so as to violate the detainees' constitutional right against deliberate indifference to their reasonable and necessary medical needs, and the resulting death of Johnson, the estate of Johnson suffered loss and damages in the form of funeral and burial expenses and loss of earnings and income that   Johnson would have earned over the remainder of his anticipated life, and the defendant Timothy Niermann, as Secretary for the State of Florida, Department of Juvenile Justice has municipal liability for such funeral and burial expenses under 42 U.S.C. § 1983.

### Count 1(j): Defendant State of Florida, Department of Juvenile Justice

### Ratification of Acts of YOI Staff

148.     The defendants Ms. Johnson and Leonard Williams, as Floor Supervisors of the non-secure units Rooms 101 and 102 of the Broward Youth Treatment Center between the hours of 8:00 p.m. and 12:00 a.m., had final making authority over all of the conduct of the other non-medical staff within the vicinity of rooms 101 and 102 who observed, witnessed and otherwise participated in the treatment of, supervision of and other conduct and behavior involving Johnson as described above.

149.     The defendants Ms. Johnson and Leonard Williams, through their direct participation in the treatment of, supervision of and other conduct and behavior involving Johnson as described above, ratified all of such illegal and unconstitutional conduct against Johnson and such ratification by the defendants Ms. Johnson and Leonard Williams subjects defendant State of Florida, Department of Juvenile Justice to municipal liability under 42 U.S.C. § 1983.

150.     As a direct and proximate cause of the ratification of all of such illegal and

unconstitutional conduct against Johnson by the defendants Johnson, Bloom, Williams, and Gardner, Johnson suffered significant bodily injury, including physical pain, suffering, mental anguish and emotional distress, and then death, and the defendant State of Florida, Department of Juvenile Justice has municipal liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

151.     As a direct and proximate cause of the ratification of all of such aforesaid illegal and unconstitutional conduct against Johnson by the defendants Johnson, Bloom, Williams, and Gardner and the resulting death of Johnson, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income under 42 U.S.C. § 1983.

## Ratification of Acts of Medical Staff

152.     Defendant Hill-Smith, as Charge Nurse of the shift at the Broward Youth Treatment Center, had the final decision making authority over all the conduct of the medical staff within the Broward Youth Treatment Center who provided medical services and treatment to Johnson and also observed, witnessed and otherwise participated in the treatment of, supervision of and other conduct and behavior involving Johnson as described above.

153.     Defendant Hill-Smith, through her direct failure to provide necessary medical care and treatment to Johnson and her failure to direct other medical staff under her supervision at the detention center to provide necessary medical care and treatment to Johnson, ratified all of such illegal and unconstitutional conduct against Johnson and such ratification by the defendants Hill-Smith subjects the defendant State of Florida, Department of Juvenile Justice to municipal liability under 42 U.S.C. § 1983.

## Existence of an Illegal Official Policy

154.     The defendant State of Florida, Department of Juvenile Justice, had an obligation not to use and employ official policies that violated Johnson's constitutional right against deliberate indifference to his reasonable and necessary medical needs.

155.     The defendant State of Florida, Department of Juvenile Justice had in force and effect an official policy described in paragraph 31. Said defective policy required a ten- minute bed check where employees conducted those ten-minute bed checks were not required to see any sign of life of the youth, even for those on medical alert, as Johnson, nor were they required to actually enter into the detainees' rooms when conducting the ten-minute bed check.

156.     As a result of the defective policy, employees of defendant Youth Opportunity Investments, LLC, specifically, defendants Johnson, Bloom, Williams, Gardner and Hill-Smith, were not aware that Johnson was suffering or had suffered a life-threatening seizure that required immediate medical attention until it was too late.

157.     As a direct and proximate cause of the defendant State of Florida, Department of Juvenile Justice's official policy in the form of the 10-minute bed check, which violated Johnson's constitutional right against deliberate indifference to his reasonable and necessary medical needs, Johnson suffered bodily injury, including physical pain, suffering, mental anguish and emotional distress, and death and the defendant State of Florida, Department of Juvenile Justice has municipal liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

158.     As a direct and proximate cause of the defendant State of Florida, Department of Juvenile Justice's official policy in the form of the 10-minute bed check, which violated Johnson's constitutional right against deliberate indifference to his reasonable and necessary medical needs and resulting death of Johnson, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that

Johnson would have earned over the remainder of his anticipated life, and the defendant State of Florida, Department of Juvenile Justice has municipal liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

**Existence of a Policy of Inadequate Training and Supervision**

159.     The defendant State of Florida, Department of Juvenile Justice had an obligation to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs.

160.     The defendant State of Florida, Department of Juvenile Justice failed to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs.

161.     As a direct and proximate cause of the defendant State of Florida, Department of Juvenile Justice's failure to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs, Johnson suffered bodily injury, including physical pain, suffering, mental anguish and emotional distress, and death and the defendant State of

Florida, Department of Juvenile Justice has municipal liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

162.     As a direct and proximate cause of the defendant State of Florida, Department of Juvenile Justice's failure to provide proper training and supervision of those medical staff that provided medical care and treatment to detainees at the Broward Youth Treatment Center so as to ensure that such medical staff properly provided necessary medical care and treatment to Johnson so as to comport with Johnson's constitutional rights against deliberate indifference to his reasonable and necessary medical needs and the resulting death of Johnson, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of earnings and income that Johnson would have earned over the remainder of his anticipated life, and the defendant State of Florida, Department of Juvenile Justice has municipal liability for such funeral and burial expenses under 42 U.S.C. § 1983.

### Existence of Custom of Tolerance of Federal Rights Violations

163.     The defendant State of Florida, Department of Juvenile Justice, maintained and perpetuated a custom of tolerance or acquiescence of the medical staff at the Broward Youth Treatment Center failing to properly provide necessary medical care and treatment to detainees at the Broward Youth Treatment Center so as to violate the detainees' constitutional right against deliberate indifference to their reasonable and necessary medical needs.

164.     As a direct and proximate cause of the defendant State of Florida, Department of Juvenile Justice maintaining and perpetuating a custom of tolerance or acquiescence of the medical staff at the Broward Youth Treatment Center failing to properly provide necessary medical care and treatment to detainees at the Broward Youth Treatment Center so as to violate the detainees' constitutional right against deliberate indifference to their reasonable and

necessary medical needs, Johnson suffered bodily injury, including physical pain, suffering, mental anguish and emotional distress, and death and the defendant State of Florida, Department of Juvenile Justice has municipal liability for such resulting bodily injury and death under 42 U.S.C. § 1983.

165.      As a direct and proximate cause of the defendant State of Florida, Department of Juvenile Justice maintaining and perpetuating a custom of tolerance or acquiescence of the medical staff at the Broward Youth Treatment Center failing to properly provide necessary medical care and treatment to detainees at the Broward Youth Treatment Center so as to violate the detainees' constitutional right against deliberate indifference to their reasonable and necessary medical needs, and the resulting death of Johnson, the estate of Johnson suffered loss and damages in the form of funeral and burial expenses and loss of earnings and income that Johnson would have earned over the remainder of his anticipated life, and the defendant State of Florida, Department of Juvenile Justice has municipal liability for such funeral and burial expenses under 42 U.S.C. § 1983.

## COUNT II-STATE LAW CLAIM FOR NEGLIGENCE

Pursuant to Fed. R. Civ. P. 10(c), the plaintiffs adopt herein by reference all of the averments set forth above, and further states as follows:

166.      The defendants, and each of them, had a duty to exercise reasonable case in the detention of Johnson and the duty to exercise reasonable care to treat any medical condition suffered by Johnson and to provide for his medical needs during his detention.

167.      The defendants, and each of them, breached their duty of care in the detention and supervision and medical care treatment of Johnson.

168.      As a direct and proximate result of the breach of such duty of care by the

defendants, and each of them, Johnson suffered physical injury, including physical pain, suffering, mental anguish and emotional distress, and death.

169.     The conduct of the defendants, and each of them, constitutes gross negligence which entitled the plaintiffs to punitive damages.

## COUNT III-STATAES LAW CLAIM FOR WRONGFUL DEATH

Pursuant to Fed. R. Civ. P. 10(c), the plaintiffs adopt herein by reference all of the averments set forth above, and further states as follows:

170.     As a direct and proximate result of the aforesaid negligence, gross negligence, and such other unlawful conduct of the defendants, and each of them, and the resulting death of Johnson, the estate of Johnson has suffered loss and damages in the form of funeral and burial expenses and loss of earnings and income that Johnson would have earned over the remainder of his anticipated life and his estate is entitled to recover actual and punitive damages pursuant to Florida Statute 768.72.

## DEMAND FOR JURY TRIAL

Plaintiffs do hereby demand a trial by jury on any and all issues so triable herein.

WHEREFORE, the Plaintiffs, and each of them, seek judgment against the defendants, jointly and severally, as follows:

1.   Judgment for the physical pain, suffering, mental anguish and emotional distress suffered by Johnson prior to his death;

2.   Judgment for the funeral and burial expenses resulting from the death of Johnson;

3.   Judgment for the loss of income and earnings of Johnson over the remainder of his anticipated life;

4.   Judgment for punitive damages; and

5.   Judgment for such other necessary and proper relief to which the plaintiffs may appear entitled, including a reasonable fee for their attorney and including a trial by jury on any and all issues so triable herein.

Dated this October 11, 2018.

Law Office of Roderick D. Vereen, Esq., P.A.
Counsel for Plaintiff
P.O. Box 68-0697
Miami, Florida 33168
Tel: (786) 391-1751
Fax: (786) 409-3113
Email: Vereen2469@aol.com


By:     */s/Roderick D. Vereen, Esq.*
RODERICK D. VEREEN, ESQ.
Florida Bar No: 869589
Primary email: Vereen2469@aol.com